This is a sentencing case focusing on whether or not the court's above-guideline sentence was permissible. We've argued that the sentence was both procedurally unreasonable as well as substantively, and there's three reasons why it's procedurally unreasonable. And the first is that the government was not allowed an opportunity to allecute. Counsel, did Martinez-Quezada have a plea agreement that he should get? I don't know if they still call it this. We used to call it an 11E1B deal to get a recommendation from the government for a particular sentence. No, no, Your Honor. He pled straight up. He was not offered our fast track program because he got this fast track out of Seattle, and under our program, once you've had it, you can't get another. So there was no offer. He pled straight up. Now, as I understand it, your argument is that he should have obtained a recommendation from the government for 21 to 27 months. Our argument is the court asked the defense to speak on whether or not an above-guideline sentence is appropriate. The guideline is 21 to 27. 21 to 27. Now, here's what I was leading up to. At the beginning of the sentencing hearing, the government attorney stands up and says, we recommend 21 to 27 months. So it seems to me that your argument comes down to saying the judge should have asked the government if it wanted to say it again. Well, at the time the government's attorney said that, the court hadn't expressed its concerns and asked for input on those concerns. And the rules very specifically says not just that the government be given an opportunity to speak, but an equal opportunity to speak. So when the court asks ---- What prejudice could there be? There's no reason to doubt, I don't think, that the government ---- that the judge would remember what the government had already said. I've certainly seen, Your Honor, it happen where a court expressed some concerns and the government attorney may have initially gone into a hearing recommending a lower sentence. Said, you know, Your Honor may be right, perhaps an upward sentence would be appropriate. And unlike the Wachenine case that I cited, there was no plea agreement, so the government wouldn't have been prohibited from taking that approach. Did the government say anything? I mean, ask to say anything? No. No. The government didn't ---- No, not an opportunity, an unequal opportunity. They just didn't ask. They spoke once. They didn't ask to speak again. And I don't understand the problem. Well, in Wachenine, this court has said that the opportunity has to be explicitly given. And if you also read the rule that it has to be equal, a court simply can't say I want to hear just from the defense on this issue and not from the government, particularly when it is important whether or not the government thinks that it's worth a public expenditure of funds to put someone in custody for a longer period of time. It always says it didn't. Correct. And it also ---- But I don't think that it was clear that the government disagreed with the court's analysis. And perhaps had the government been given an opportunity to speak, the district court would have thought more about its concerns going to the other couple of issues that I've raised with respect to the concern that Mr. Martinez-Quezada got some great break when he was in Seattle. Can I ask a separate question? I gather you're dropping the issue of the statutory issue you raised. We're not dropping it for purposes of possible Supreme Court review. You think it's governed by our case law. I do, Your Honor. All right. The second issue ---- And they go together because when the court isn't asking the government to speak, there is a risk that the sentence will be procedurally unreasonable. And in here the court repeatedly seemed to think that Mr. Martinez-Quezada got some great break when he was in Seattle and so he shouldn't get a great break again. But because it was not ---- it was never raised by the parties beforehand, I don't think the district court really fleshed out his thought process on that issue. Really the 16-level enhancement, although stated in the plea agreement previously, was never actually applicable. Mr. Martinez-Quezada never, if it would have been actually looked at and focused at, was facing anything close to 46 to 57 months in Seattle. He did not get a great break in Seattle. He got a mid-range sentence. And, in fact, the proceedings in Seattle were of great detriment to Mr. Martinez-Quezada because it made him ineligible for a fast-track program in the Eastern District of Washington. There was no reason to think that Mr. Martinez-Quezada wouldn't be given incremental punishments to give him 12 months and a day mid-range sentence the first time really and a second time arrangement 21 to 27 months, twice that. Well, when the ---- I was checking to see if I remember this right, and it looks like I did. At the beginning of the sentencing, Mr. Kessy, that's the prosecutor, right? Mr. Kessy, yes. He says the defendant now stands before the court for sentencing. I believe the standard range is 21 to 27 months. The government would ask for a sentence within the range. I can't see why the prosecutor would want to stand up and say anything different. The defendant is pleading straight up. The prosecutor didn't ask to speak, and the judge has already heard the prosecutor say the government would ask for a sentence within the range, which means 21 to 27 months. I don't understand what's missing. Well, the court specifically, no one asked for an above-guideline sentence, and so that was not known to be at issue. A critical player in a sentencing is the judge. True. He gets to judge. He gets to judge. But the rule also says to give the parties an equal opportunity to speak. Here, very specifically, an equal opportunity meaning to respond to the court's concerns, and the government was never asked to respond to the court's concerns. Allocution, and that struck me as a problem, actually, because allocution means what the defendant says before he's sentenced. Government doesn't allocute. Well, the rule says, if you read Rule 11, it says opportunities to speak, and it says defense attorney, defendant, and the government. So I use that just because it's termed in opportunities to speak, and it's not sufficient that it's in writing, and Walkenheim makes that clear. All the rule says is opportunity to speak. It doesn't say allocution. I used that term, Your Honor. He spoke. He spoke, but he didn't receive an equal opportunity to speak. Is there anything in the record which would suggest that the government would say something different on the second opportunity than it said in the first? There's not, but, again, the judge simply didn't know one way or another whether or not the government would have shared its concerns. I do think the other two issues are significant. The other two issues, one of them is your contention that the court thought that there was a higher sentence in Seattle. I don't really read the record that way. It seems to me what he's saying is there's some chance that in this case we could have taken that position, although I'm satisfied that we properly didn't. I don't see where he's saying, evidencing any confusion about Seattle. He said repeatedly you could have faced a much greater time if you weren't given this break in Seattle. Well, I'm aware he said that. First of all, repeatedly, I don't think so. But one time he says that if he received the bump that he would have gotten in Seattle, he'd be facing. And that seems to be talking about, as it goes on later on, he's saying that there's a firearm discharge that the Western District used to increase the criminal guideline range by calling it an aggravated felony. Our probation office didn't do that, and I'm satisfied with the reasons they didn't. But it may be that we could have, and it would have resulted in a higher sentence. In other words, it isn't that in Seattle, that the fact that he didn't get it in Seattle is the problem. The point is that there's some that he thought it was at least arguable is really what he's saying. I think that that's both problematic. If he disagreed with the guidelines and he didn't make a good enough record, that's the reason why he's going up so much. But I do think that that's what he did. When he talked to the defense attorney, he said that he was looking at twice this range in Seattle. Now, if his range, if he got the six... I didn't see it that way at all. The way I read what the judge said, he was saying you skated on the last one, so the guidelines somewhat understate your criminality. Right. And he didn't skate on the last one. That's exactly one of the reasons why the guidelines say a judge may want to depart upward. Right. But if he'd looked at it accurately, he didn't skate on the last one. He got a mid-range sentence the last time. That's the legal, quasi-legal factual error the court made, thinking he skated. Mid-range sentence can be for something that's pleaded down. If mid-range sentence, it wouldn't have been pleaded down. If he would have not gotten the 16-0 enhancement, it wasn't applicable. It never was applicable. This is why I don't think this is what he was saying. It wouldn't have had any effect on this sentence if he'd gotten a different sentence in Seattle, would it? I think in the judge's mind, he thought you got a big break before and you came back anyway. And the sentence he chose. If he receives a bump he would have gotten in Seattle, he'd be facing, i.e., now, more than double that. The bump in Seattle was double what this current range is. Now, if he would have gotten a 16-level here with a higher criminal history category, the 16-level enhancement would have been more than double. So I see the double referring to the range in Seattle, not the range with the 16-level here. More than double that. And I think the judge should have said, I'm giving you more time, i.e., here, here. Because he's not saying anything about what would have happened in Seattle would not have had any effect on this, right? It shouldn't have. I would have ‑‑ but I'm troubled both ways. If you think somehow he had misgivings about the guidelines, then the judge should have explicitly said, that's the reason why I'm giving you more time. Again, he didn't account for, going to the third issue, unwarranted disparities, which this court in Cardi specifically said was a major concern when you're doing a significant bump up from the guideline. And here, again, the sentence is close to double what the guideline range sentence is, and the judge didn't discuss disparities at all. So I'm at least wondering what did prompt this? How can you reconcile disparities? It was just the guy kept coming back and back and back and back and not showing up and stuff like that. But he didn't discuss whether or not that was unusual. And having worked in these cases for ten years, it's unfortunately not unusual. So at least for someone that's familiar with these types of cases to look at this record, why is this so unusual that this person gets the rare circumstance? What's the matter with the judge raising a sentence over the guidelines because he thinks a person is a whole lot more dangerous than most of the 1326 violators he sees? Most 1326 violators, there's really, some of them are good citizens in every way except they're not citizens. Well, the judge didn't. When he says there's this firearms discharge, innumerable failures to appear, and lots of drunk drivings, he seems like a dangerous guy. Well, the judge didn't talk about a comparison. Again, I can only draw from my own comparison. I do, at ER 34, I think. He said that he didn't talk about him as compared to other people. He said that he has a number of drunk drivings. The firearm conviction, which was 15 years old, he said was like a drunk driving offense. This is a person essentially with misdemeanor type offenses and a firearm offense that was fairly both old and not as serious. Thank you. Thank you, Counselor. We can't keep talking about felonies. Thank you, Counselor. Thank you. Our questions have taken you way over your time. Thank you. We'll hear from the government. Good morning to the court and counsel. Please support Donald Cressy for the United States Plaintiff Appellee. And as Judge Kleinfeld noted, I also represented the government at the sentencing hearing. The government does not believe the defendant has met its burden in this case. As I read the case law, I think it's the defendant's or felon's burden in this case to demonstrate that there was plain error, which somehow affected the defendant's substantial rights. And as far as the government's… You're not complaining about the fact you didn't get a chance to comment the second time? No, Your Honor. If the court wants to speak in practical terms, if I had had further to say, I would have stood. And it's always been my experience that the district court will recognize counsel when they stand. I didn't have anything else to say. I made a recommendation in this case. I made it in writing in my written submission to the court. And unlike in WAC 9 where the submission was made four days prior to the sentencing hearing, mine was made three weeks prior to sentencing. And I would certainly imagine during that time the court and its staff would have had a chance to review my written submissions. During the sentencing hearing, I orally reminded the court of the government's position, 21 to 27 months. I had nothing else to say. I didn't believe it was my position to advocate for the defendant. Can I… Let me show you the one part of this that troubles me, Simon. It's a little different from the argument that the defendant is making perhaps. And that's that I don't put much credence in the notion that the district judge was confused about what happened in Seattle. But what he did say is this. There's a firearm discharge conviction the Western District used to increase the criminal guideline range by calling it an aggravated felony, meaning the probation office. And then he says, our probation office didn't do that and I'm satisfied with the reasons they didn't. But it may well be that we could have and it would have resulted in a higher sentence. That seems like he's sort of hedging on his… on what he needs to do first under the Cardi and Case Law, which is make a guidelines decision. He seems to be saying, well, I'm making this guidelines decision. But, you know, I'm also taking into account the fact that I could have made a different guidelines decision. And so he's taking into account a construction of the guidelines that he says is wrong. There's something bizarre about that. I respectfully disagree, Your Honor. I think the court is commenting on it. And he's warning the defendant. He's saying to the defendant, you're already in trouble. You could have been in even worse trouble if we'd made the same mistake. In other words, even he says it may well be that we could have. He seems to be saying that we could have read the guidelines differently than we read them. And he has to read the guidelines one way or another, not both ways, and take into account like 50 percent of if he'd read it the other way. It seems like he's not doing the first job that he's supposed to do, which is make a guidelines decision and stick to it. Your Honor, the court closely reads the record. The judge also stated he was prepared to give the defendant 48 months when he first took the bench. So what? What this court is saying is obviously he has changed his mind somewhere between the time he took the bench when he intended to give him 48 months. But he still seems to be taking into account the fact that maybe his guidelines determination should have been something else. I disagree. I think it's my opinion the court knows what the guideline range is. That's why the court states seven reasons why it's going to depart upward. Well, why did he mention this several different times, then? With all due respect, Your Honor, I can't fathom the judge's mind. I don't know why he did it. He said it. He didn't explain it. He just said it. But then he goes on, as I say, to state seven reasons why he thinks this defendant should receive an above-the-guideline sentence from 21 to 27, upward to 40 months. And those seven reasons include his prior deportation, his drunk driving, his disrespect for the law. The court says it wants to craft a sentence which is enough. But I find it interesting the court says, but not too much. Basically, the court is saying, I need to teach you a lesson. You need to listen to the court. And I want to do that for all the reasons the court should. But I don't want to be too harsh on you. So the court determines that 40 months, at least in his opinion, at that time, is going to be sufficient to get this defendant's attention to modify his behavior. Anything further, counsel? Does the court have any other questions? No further questions. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument next in United States v. Garcia Villalba and also Garcia Villalba.
judges: O'scannlain, Kleinfeld, Berzon